UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ADRIAN HERNANDEZ,                    )
                                     )    No. CV-11-03123-CI
        Plaintiff,                   )
                                     )    REPORT AND RECOMMENDATION TO
v.                                   )    GRANT PLAINTIFF'S MOTION FOR
                                     )    SUMMARY JUDGMENT AND TO
CAROLYN W. COLVIN, Commissioner      )    REMAND FOR ADDITIONAL
of Social Security,[1]               )    PROCEEDINGS PURSUANT TO 42
                                     )    U.S.C. § 405(g)
        Defendant.                   )

    BEFORE THE COURT are cross-Motions for Summary Judgment. ECF
No. 15, 18. Attorney D. James Tree represents Adrian Nicholas
Hernandez (Plaintiff); Special Assistant United States Attorney
Debra J. Meachum represents the Commissioner of Social Security
(Defendant). The parties did not consent to disposition by a
magistrate. After reviewing the administrative record and the
briefs filed by the parties, the court recommends that Plaintiff's
Motion for Summary Judgment, ECF No. 15, be **GRANTED** and Defendant's

    [1]Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013. Pursuant to FED. R. CIV. P. 25(d),
Carolyn W. Colvin is substituted for Michael J. Astrue as the
Defendant in this suit. No further action need be taken to continue
this suit. 42 U.S.C. § 405(g).

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 1

Motion for Summary Judgment, ECF No. 18, be **DENIED.**

### JURISDICTION

On January 16, 2008, Plaintiff protectively filed an application for supplemental security income insurance benefits, alleging disability beginning June 3, 2005. Tr. 15; 91. In his application for benefits, Plaintiff reported that his ability to work was limited by social anxiety disorder, major depression and bulimia nervosa. Tr. 95. Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). Tr. 55-64. A hearing was held on September 15, 2009, at which vocational expert K. Diane Kramer, and Plaintiff, who was represented by counsel, testified. Tr. 28-52. ALJ Moira Ausems presided. Tr. 28. The ALJ denied benefits on August 27, 2010. Tr. 12-24. Plaintiff sought review with the Appeals Council, which denied review. Tr. 1-3. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 21 years old and living with his sister in her apartment. Tr. 32; 42. He finished the 11th grade, but the following year his father died, he declared his homosexuality, and he testified that "everything just went downhill from there." Tr. 32. Plaintiff said he is interested in getting his GED online, and would like to eventually attend art school. Tr. 33.

Plaintiff regularly attends group and individual therapy, and he has been able to stop his self-mutilation. Tr. 35-36. Plaintiff

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

still engages in binge eating, followed by purging, three or four times per day. Tr. 36-38. He testified that he tried methamphetamine as a method of weight loss, and he used once a weekend for about a year. Tr. 40. Plaintiff said he stopped using about one year prior to the hearing. Tr. 40. Plaintiff testified that he never leaves his room, and he will go to the store only if he must. Tr. 42. Plaintiff has a driver's license, but it is suspended due to an unpaid ticket. Tr. 43.

Plaintiff said he uses the computer, and while online, he retouches people's photographs. Tr. 34-35. He borrows movies to watch from his sister and brother. Tr. 44. When asked how much time he spends inside his room in his sister's apartment, Plaintiff said, "Most of the time. Like everyday. Every day all day. I really don't leave my room unless I have to." Tr. 45-46. Plaintiff explained the reasons for not wanting to leave his room: "Just I don't like being around people. I'm afraid they'll judge me. I mean, I know that's normal, but I take it to the extreme. I feel, I feel ugly, fat – I don't – I don't need to show everybody." Tr. 46. Plaintiff testified that he has problems with anxiety every day. Tr. 46. During those episodes, he testified that he feels like he is going to die, and his palms get sweaty, he becomes light-headed and he "freak[s] out." Tr. 46.

### ADMINISTRATIVE DECISION

At step one, ALJ Ausems found Plaintiff had not engaged in substantial gainful activity since January 16, 2008, the application date. Tr. 17. At step two, she found Plaintiff had the following severe impairments: dysthymic disorder, adjustment disorder with

1  mixed features, generalized anxiety disorder, bulimia nervosa,

2  borderline personality disorder, and polysubstance abuse.  Tr. 17.

3  At step three, the ALJ determined Plaintiff's impairments, alone and

4  in combination, did not meet or medically equal one of the listed

5  impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R.

6  §§ 416.920(d), 416.925 and 416.926).  Tr. 17.  The ALJ found

7  Plaintiff has the Residual Functional Capacity ("RFC") to perform

8  "work at any exertional level with the following nonexertional

9  limitations: he is limited to the performance of simple routine

10  tasks that do not involve contact with the general public or contact

11  with co-workers on more than an occasional basis."  Tr. 19.

12      In her step four findings, the ALJ found Plaintiff's statements

13  regarding pain and limitations were not credible to the extent they

14  were inconsistent with the RFC findings.  Tr. 20.  The ALJ found

15  that Plaintiff had no past relevant work, but after considering

16  Plaintiff's age, education, work experience, and residual functional

17  capacity, jobs exist in significant numbers in the national economy

18  that Plaintiff can perform, such as kitchen helper, cleaner,

19  industrial, and laundry worker.  Tr. 22-23.

20                    **STANDARD OF REVIEW**

21      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

22  court set out the standard of review:

23          A district court's order upholding the Commissioner's
        denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
24      211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
        Commissioner may be reversed only if it is not supported
25      by substantial evidence or if it is based on legal error.
        *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
26      Substantial evidence is defined as being more than a mere
        scintilla, but less than a preponderance.  *Id.* at 1098.
27      Put another way, substantial evidence is such relevant
        evidence as a reasonable mind might accept as adequate to
28

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 4

support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).   The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.   If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).   If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).   In steps one through four, the burden of proof

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

1  rests upon the claimant to establish a prima facie case of
2  entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-99.
3  This burden is met once a claimant establishes that a physical or
4  mental impairment prevents him from engaging in his previous
5  occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a
6  claimant cannot do his past relevant work, the ALJ proceeds to step
7  five, and the burden shifts to the Commissioner to show that (1) the
8  claimant can make an adjustment to other work; and (2) specific jobs
9  exist in the national economy which claimant can perform.  *Batson v.*
10 *Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004).
11 If a claimant cannot make an adjustment to other work in the
12 national economy, a finding of "disabled" is made. 20 C.F.R. §§
13 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

14                                **ISSUES**

15     Plaintiff contends that the court erred by discounting
16 Plaintiff's credibility and by improperly weighing the medical
17 evidence.  ECF No. 16 at 15.

18                               **ANALYSIS**

19 **A.    Credibility**

20     The Plaintiff contends that the ALJ erred by discounting
21 Plaintiff's credibility.  ECF No. 16 at 18.  In analyzing the
22 Plaintiff's credibility, the ALJ noted that the Plaintiff "performs
23 basic activities of daily living without the assistance of others."
24 Tr. 20.  The ALJ also relied upon the fact that Plaintiff does not
25 need prompts or cues for daily tasks, and he is able to plan and
26 prepare meals, perform housework, do laundry, shop, drive a car and
27 pay bills.  Tr. 20.  The ALJ also noted that the Plaintiff admitted

28

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 6

he listens to music, watches, movies and spends "extensive periods of time on the computer performing such activities such as photo re-touching and browsing social media outlets such as Facebook and MySpace." Tr. 20. The ALJ concluded "overall, the activities reported by claimant are inconsistent with his allegations of total mental disability under the Social Security Act." Tr. 20.

An adverse finding of credibility must be based on "clear and convincing reasons" where no affirmative evidence exists of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008)(quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007). Daily activities that are transferable to a work setting may be grounds for an adverse credibility finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9th cir. 1989). However, daily activities that do not contradict a claimant's other testimony, or meet the threshold for transferable work skills, cannot form the basis of an adverse credibility determination. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).

> [T]he mere fact that a plaintiff has carried on certain activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly' incapacitated in order to be disabled.

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). An ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community

activities.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).  When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."  *Morgan*, 169 F.3d at 600.  An ALJ must make a specific finding relating to the transferability of the activities to a workplace to refute a plaintiff's allegations of disability.  *Orn*, 495 F.3d at 639.

In this case, the ALJ considered Plaintiff's daily activities —which included watching television, using the computer, preparing an occasional meal, and housework—and concluded his activities were inconsistent with his complaints of a severe mental illness.  Tr. 20.  The record does not support the ALJ's conclusion.  Moreover, the ALJ failed to make a specific finding relating to the transferability of Plaintiff's activities to a workplace.  *Orn*, 495 F.3d at 639.

The record reveals Plaintiff testified he never leaves his home, but he has one friend who visits once or twice per week.  Tr. 41-42.  He does not regularly grocery shop, attend a club or church, and he spends "[e]very day all day" in his room.  Tr. 41-45.  He does not leave his room unless he must.  Tr. 46.  Plaintiff said he does not like being around people because he is afraid he will be judged.  Tr. 46. Plaintiff's use of the computer is limited and includes visiting social media sites, and retouching photographs. Tr. 34.  Plaintiff also watches movies, and attends therapy.  Tr. 35; 44.  Plaintiff testified that his sister controls all his

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

appointments and scheduling.  Tr. 42.  Plaintiff said that his life is "not normal.  I can't do anything.  I can't, I can't be active. I mean, come on, I'm 21.  I'm supposed to go out with friends, go to clubs, have a job, have a car.  Just can't – I can't do any of that."  Tr. 45.  Plaintiff's description of his daily activities to Dr. Toews was consistent with his hearing testimony.  Dr. Toews' report indicates that Plaintiff said his favorite activities are smoking, listening to music and computer work. Tr. 182.  Plaintiff's typical day includes waking up, smoking, eating breakfast followed by purging, computer work, lunch followed by purging, smoking, dinner, listening to music, and bed.  Tr. 182.

ALJ Ausems failed to explain how Plaintiff's limited daily activities could be transferred to a work setting, and the ALJ also failed to find that Plaintiff spent a "substantial" part of his day engaged in such activities.  See *Orn*, 495 F.3d at 639 (the ALJ erred in failing to "meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations").  In the absence of these findings, the ALJ erred by relying upon Plaintiff's daily activities to impugn his credibility.

When a reason for an adverse credibility determination is legally insufficient, the court considers whether the reliance on an invalid reason was a harmless error.  See *Batson*, 359 F.3d at 1195-97 (applying a harmless error standard where part of the credibility finding was invalid).  The error is deemed harmless where substantial evidence exists that supports the ALJ's conclusions on credibility and the error "does not negate the

validity of the ALJ's ultimate credibility conclusion." *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d at 1197).  In this case, the finding regarding Plaintiff's daily activities was insufficient because this was the primary reason the ALJ gave for discounting Plaintiff's credibility.  As a result, no substantial evidence remains to support the credibility finding, and the ALJ's error was not harmless.  The court must remand for a new determination of Plaintiff's credibility.

**B.  Medical opinions**

Plaintiff contends that the ALJ erred in weighing the medical evidence.  ECF No. 16 at 16.

**1.  Heather McClure, ARNP**

The ALJ gave little weight to the opinions of Heather McClure, ARNP.  Tr. 21.  The ALJ concluded that Ms. McClure's opinions were "inconsistent with the overall objective medical findings in the record, including the opinion of Dr. Kraft" and inconsistent with "the mental abilities that the claimant has demonstrated in conjunction with his performance of his acknowledged wide-ranging activities and hobbies."  Tr. 21.

Ms. McClure initially examined Plaintiff on February 19, 2008, and treated him from August 6, 2008, through August 18, 2009.  Tr. 203; 284-309.  During the initial exam, Ms. McClure noted that Plaintiff was disheveled, he pulled his t-shirt over his mouth when he was not talking, and when he talked, he moved the t-shirt to his chin but was careful to never show his neck.  Tr. 204.  Ms. McClure observed Plaintiff's behavior as "extremely passive and eye contact is poor.  Mood depressed.  Affect flat and depressed."  Tr. 204.

Ms. McClure diagnosed Plaintiff with generalized anxiety disorder, bulimia nervosa, depressive disorder, NOS, and borderline personality disorder. Tr. 205. She assigned him a GAF of 45. Tr. 205.

On April 20, 2009, Ms. McClure completed a Psychological/ Psychiatric Evaluation. Tr. 254-57. She assessed Plaintiff with severe impairments in verbal expression of anxiety or fear and social withdrawal, and two marked impairments in both physical complaints and global illness. Tr. 255. Ms. McClure also assessed Plaintiff with marked impairments in the abilities to (1) understand, remember and follow simple instructions; (2) relate appropriately to co-workers and supervisors; (3) interact appropriately in public contacts; and (4) respond appropriately to and tolerate the pressure and expectations of a normal work setting. Tr. 256. She opined treatment would decrease Plaintiff's anxiety and self-harming behaviors. Tr. 257.

The ALJ's gave little weight to Nurse McClure's opinion because her assessment contradicted the overall medical record, Dr. Kraft's opinion, and Plaintiff's abilities demonstrated in his daily activities:

> Ms. McClure's opinions in this regard are inconsistent with the overall objective medical findings in the record, including the opinion of Dr. Kraft, who reviewed the entire medical evidence of record. Ms. McClure's opinions are also inconsistent with the mental abilities that the claimant has demonstrated in conjunction with his performance of his acknowledged wide-ranging activities and hobbies.

Tr. 21.

In general, more weight should be given to the opinion of a

treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ must set out a detailed and thorough summary of the facts and conflicting evidence, stating his or her interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer conclusions; the ALJ must also explain why his or her interpretation, rather than the treating doctor's interpretation, is correct. *Orn*, 495 F.3d at 632 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

To the extent the ALJ rejected Nurse McClure's opinion on the basis that her opinions were contradicted by nonexamining Dr. Kraft, the ALJ erred. "A treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). When a nontreating physician's opinion contradicts a treating physician's opinion, but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the treating physician's opinion may be rejected only if the ALJ gives "specific,

legitimate reasons for doing so that are based on substantial evidence in the record." *Morgan*, 169 F.3d at 600. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester,* 81 F.3d at 831.

In this case, Ms. McClure's opinions were well-supported by her treatment notes and were consistent with the medical evidence in the record. The medical records from Plaintiff's treating and examining physicians corroborate Plaintiff's limitations from his mental disorders. Tr. 137; 139-40; 145-47; 180-83; 203-05; 247-050; 254-57. As such, the existence of a contradictory opinion from a nonexamining physician is not a valid reason upon which to dismiss a treating medical provider opinion.

Finally, the ALJ's remaining reason for discounting Nurse McClure's opinion – that her opinions were contradicted by the mental abilities displayed by Plaintiff in his "wide-ranging activities and hobbies" – is not supported by the record. The ALJ's assertion that Plaintiff's daily activities are "wide-ranging" and display mental abilities inconsistent with Ms. McClure's assessment is not supported by the record. Instead, as discussed above, Plaintiff's daily activities are minimal – he watches movies, uses a computer, and he rarely leaves his room. These activities are neither properly characterized as "wide-ranging," nor do these activities indicate that Plaintiff's mental abilities are contrary to Ms. McClure's assessment. Because the record does not support the ALJ's reasons for discounting Ms. McClure's opinions, the ALJ

1  erred in giving her opinion little weight.  On remand, the ALJ

2  should reconsider the opinion of Ms. McClure and provide valid

3  reasons for the weight she assigns to Ms. McClure's opinion.

4      **2.   Jay M. Toews, Ed.D.**

5      The ALJ gave little weight to Dr. Toews' opinion that Plaintiff

6  would be unable to sustain employment due to his multiple

7  psychiatric problems.  Tr. 21.  The ALJ's offered reasons for

8  rejecting Dr. Toews' opinion were based upon the assertions that his

9  opinion was inconsistent with his own observations, with Dr. Kraft's

10  opinions, and with Plaintiff's daily activities:

11       Dr. Toews' opinion in this regard is found to be
         internally inconsistent with the objective observations he
12       reported upon mental status examination; moreover, his
         opinion is inconsistent with the overall objective medical
13       evidence, including the opinion from Dr. Kraft, and the
         claimant's admitted significant activities of daily
14       living."

15  Tr. 21.  Dr. Toews examined Plaintiff on March 20, 2008, and noted

16  Plaintiff appeared sad and depressed.  Tr. 182.  Plaintiff's scores

17  on the Beck Depression Inventory-II and Beck Anxiety Inventory were

18  both in the severe and the moderately severe range, respectively.

19  Tr. 182.  Dr. Toews observed visible scars on Plaintiff's arms from

20  self-mutilation.  Tr. 182.  Dr. Toews observed Plaintiff to be

21  "severely depressed and severely anxious with obsessive thoughts."

22  Tr. 183.  Dr. Toews opined that Plaintiff is cognitively intact, but

23  his mental acuity and his attention and concentration are all

24  affected by anxiety and depression.  Tr. 183.  Dr. Toews also opined

25  that while Plaintiff's "psychiatric symptoms are severe in and of

26  themselves," the symptoms were "compounded by substance abuse."  Tr.

27  183.  Dr. Toews concluded that Plaintiff has a severe adjustment

28

disorder, eating disorder, and major depression, and Plaintiff was unable to sustain employment due to his multiple psychiatric problems. Tr. 183. Dr. Toews opined that Plaintiff requires intensive one-on-one psychotherapy with a skilled therapist. Tr. 183. Dr. Toews' prognosis for Plaintiff was that "[w]ith appropriate treatment and abstinence from alcohol and drugs, he would have a good prognosis." Tr. 183.

The ALJ failed to provide sufficient "specific and legitimate" reasons for giving little weight to the opinions of examining Dr. Toews. *See Lester*, 81 F.3d at 830 (ALJ must provide "specific and legitimate" reasons supported by substantial evidence for rejecting opinions of examining physician); *see also Magallanes*, 881 F.2d at 751 (ALJ should provide detailed and thorough summary of the facts and conflicting clinical evidence, stating his/her interpretation, and making findings); *Reddick*, 157 F.3d at 725 (ALJ must set forth own interpretations and explain why they, rather than the doctor's, are correct).

With Dr. Toews's assessment, the ALJ failed to provide a detailed and thorough summary of the conflicting evidence, and stating her interpretation of the facts and explaining how her interpretations, rather than Dr. Toews' conclusions, are correct. First, the ALJ failed to specify how Dr. Toews' conclusions were contradicted by his observations. Upon review, contradictions in Dr. Toews' observations and conclusions are not apparent. Instead, Dr. Toews' overall observations, findings and conclusions are consistent. Moreover, as analyzed above, the ALJ's characterization of Plaintiff's "significant activities of daily living" is not

supported by the record.  Plaintiff's minimal daily activities do not contradict, but instead support Dr. Toews' assessment of Plaintiff's limitations.  Finally, the ALJ may not reject an examining physicians' opinions simply based upon a contradiction with a nonexamining physician's opinions. *See Lester*, 81 F.3d at 830.  The ALJ's proffered reason that Dr. Toews' assessment is entitled to little weight because his conclusions differed from nonexamining Dr. Kraft's opinions was error.

The ALJ's reasons for giving little weight to Dr. Toews' opinions did not constitute "specific and legitimate" reasons and, thus, was legal error.  On remand, the ALJ should reconsider the opinion of Dr. Toews and provide valid reasons for the weight she assigns to his opinion.

   **3.   Tracy Moline, MSW; Ronda Eucker, MSW; Travis S. Gunn, LCSW**

The ALJ gave little weight to evaluations from three social workers – Tracy Moline, MSW, Ronda Eucker, MSW and Travis Gunn, LCSW – who evaluated Plaintiff in 2007 and 2008.  Tr. 20-21.  The ALJ rejected the opinions because they were from "DSHS non-acceptable medical source mental health evaluators," each were internally inconsistent with the objective findings and with the "medical evidence as a whole."  Tr. 21.

Tracy Moline, MSW, completed a Psychological/Psychiatric Evaluation of Plaintiff on July 24, 2007.  Tr. 138-41.  Ms. Moline assessed Plaintiff with four severe impairments in depressed mood, suicidal trends, paranoid behavior and physical complaints.  She assessed Plaintiff with three marked impairments in verbal expression of anxiety or fear, expression of anger, and global

illness.  Tr. 139.  In cognitive functioning, Ms. Moline found Plaintiff exhibited marked limitations in the ability to exercise judgment and make decisions, and moderate impairments in the abilities to understand, remember and follow simple as well as complex instructions and learn new tasks.  Tr. 140.  Ms. Moline found that socially, Plaintiff was severely impaired in his ability to interact appropriately in public contacts and markedly limited in his ability to care for himself, including personal hygiene and appearance.  Tr. 140.  Ms. Moline opined Plaintiff needed inpatient treatment for his eating disorder.  Tr. 141.  Ms. Moline rated Plaintiff as chronically mentally ill.  Tr. 141.

Ronda Eucker, MSW, completed a Psychological/Psychiatric Evaluation of Plaintiff on December 5, 2007.  Tr. 144-47.  Ms. Eucker also conducted an Initial Assessment of Plaintiff on January 15, 2008.  Tr. 153-59.  Ms. Eucker found that Plaintiff was severely impaired in social withdrawal and thought disorder, and markedly impaired in verbal expression of anxiety or fear.  Tr. 145.  Ms. Eucker assessed Plaintiff with moderate impairments in the ability to understand, remember, and follow complex instructions.  Tr. 146.  She found that socially, Plaintiff was severely impaired in his abilities to relate appropriately to co-workers, interact appropriately in public contacts, and respond appropriately to and tolerate the pressure and expectations of a normal work setting.  Tr. 146.  Ms. Eucker also found that Plaintiff was moderately impaired in his ability to control physical or motor movements and maintain appropriate behavior.  Tr. 146.  Ms. Eucker opined that medication and counseling may alleviate symptoms enough to

eventually enable Plaintiff to work or go to school.  Tr. 147.  She assessed Plaintiff as "seriously disturbed."  Tr. 147.

In Ms. Eucker's January 2008, assessment, she noted that Plaintiff "spent most of the interview with the front of his shirt pulled up to hide most of his face."  Tr. 153.  Ms. Eucker also noted that Plaintiff's "beliefs about his body would be considered delusional as he is a very average looking man with an average height and build."  Tr. 153.

Travis S. Gunn, LCSW, completed a Psychological/Psychiatric Evaluation of Plaintiff on June 5, 2008.  Tr. 247-52.  Mr. Gunn assessed Plaintiff with severe impairments in social withdrawal and marked impairments in verbal expression of anxiety or fear, expression of anger, paranoid behavior, and global illness.  Tr. 248.  Mr. Gunn found that Plaintiff's cognitive functioning was overall mildly impaired, and his social functioning was severely impaired in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and markedly impaired in his ability to relate appropriately to co-workers and supervisors, and interact appropriately in public contacts.  Tr. 249.  Mr. Gunn noted that Plaintiff had been on Prozac until two days prior to the assessment, when he suffered a panic attack and stopped, but was scheduled to visit his provider to discuss medication.  Tr. 249.  Mr. Gunn opined that if Plaintiff was taking the correct medication, was consistent with treatment and completed an eating disorder inpatient program, he could participate in educational or employment activities.  Tr. 250.  Mr. Gunn assessed Plaintiff as "chronically mentally ill."  Tr. 250.

The ALJ's first reason for giving little weight to the opinion from the social workers was because they were "non-acceptable medical source mental health evaluators." Tr. 21. Every medical opinion, regardless of its source, is to be considered by the ALJ in a social security disability proceeding. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1527(d). "Medical sources" refers to both acceptable medical sources and other health care providers who are not acceptable medical sources. See 20 C.F.R. § 416.902. Evidence from "other sources" should be used to show the severity of a claimant's impairments and how the impairments affect the claimant's ability to work. 20 C.F.R. § 404.1513(d). "Other sources" includes licensed social workers. 20 C.F.R. § 404.1513(d)(1).

Non-acceptable medical sources should be evaluated under the same factors as all other medical opinions.[2] SSR 06-03p. These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion. SSR 06-03p. Depending upon the facts of a case, an opinion from a non-acceptable medical source may outweigh the opinion of an acceptable medical source. SSR 06-03p. As a result, dismissing a medical opinion for the reason that it originates from a non-acceptable medical provider is error. The ALJ

---

[2]See 20 C.F.R. § 404.1527(d) and 416.927(d).

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 19

is required to review the opinions from these non-accepted sources and evaluate the assessments pursuant to the regulations.

The ALJ's second reason for giving little weight to these opinions was a general statement that each opinion was internally inconsistent and inconsistent with the "medical evidence as a whole." Tr. 21. Again, the ALJ's summary statement is insufficient to reject an examining medical provider's opinion. *See Lester*, 81 F.3d at 830 (ALJ must provide "specific and legitimate" reasons supported by substantial evidence for rejecting opinions of examining physician); *and see Magallanes*, 881 F.2d at 751 (ALJ provides "specific and legitimate" reasons by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings); *Reddick*, 157 F.3d at 725 (ALJ must set forth own interpretations and explain why they, rather than the doctor's, are correct).

Moreover, the ALJ's conclusions are not supported by the record. Instead, the three social worker conclusions are each supported by their respective observations of Plaintiff. Also, contrary to the ALJ's conclusion, a review of the record reveals the weight of the medical evidence – much of which the ALJ improperly discounted – supports the opinions expressed by these medical providers that Plaintiff suffers from severe and marked impairments, and he requires intense treatment before he can enter the workforce or begin school. Tr. 137; 139-40; 145-47; 180-83; 203-05; 247-050; 254-57. As a result, the ALJ's weighing of these opinions was legal error. On remand, the ALJ should reconsider these opinions and provide valid reasons for the weight she assigns to each of the

three opinions from the social workers who examined Plaintiff.

**4.   John McRae, Ph.D.**

The ALJ gave "little weight" to the December 7, 2007, opinion from John McRae, Ph.D., because his opinion was based upon his review of "only two other opinions reported by individuals who are not considered 'acceptable medical sources'" and because his opinion was inconsistent with the overall objective medical evidence and was contradicted by nonexamining physician Patricia Kraft, Ph.D.  Tr. 20.

John McRae, Ph.D., completed a Certification for Medicaid form on December 26, 2007.  Tr. 137.  Dr. McRae's findings are cursory. He found that Plaintiff needed long-term therapy and vocational rehabilitation before Plaintiff could work.  Tr. 137.  Dr. McRae noted several evaluations observed that Plaintiff had an eating disorder and a problem with self-mutilation.  Tr. 137.  Dr. McRae concluded Plaintiff was severely socially isolated and limited.  Tr. 137.  Dr. McRae approved Plaintiff for medicaid benefits.  Tr. 137.

As analyzed above, the ALJ improperly rejected the medical opinions from the non-acceptable medical sources. To the extent the ALJ rejected Dr. McRae's opinion because it was based upon the opinions of non-accepted medical providers, the ALJ erred. Moreover, contrary to the ALJ's conclusion, Dr. McRae's opinion that Plaintiff needed therapy and training to be able to work was consistent with the majority of the medical evidence in the record. Tr. 137; 139-40; 145-47; 180-83; 203-05; 247-50; 254-57.  As a result, the ALJ erred in weighing the opinion from Dr. McRae.  On remand, the ALJ should reconsider the opinion of Dr. McRae, and

provide valid reasons for the weight she assigns to his opinion.

**5.   Patricia Kraft, Ph.D.; James Bailey, Ph.D.**

The ALJ gave "great weight" to the opinions of the two nonexamining physicians:  Patricia Kraft, Ph.D., and James Baily, Ph.D.  Tr. 22.   The ALJ's  explanation for relying heavily upon the reviewing physicians was that the opinions were "well-supported by the overall objective medical evidence and the claimant's admissions regarding his significant activities of daily living."  Tr. 22.

Patricia Kraft, Ph.D., completed a Psychiatric Review Technique Form on April 7, 2008.  Tr. 184.  Dr. Kraft noted Plaintiff had dysthymic disorder, adjustment disorder with mixed features, severe, anxiety disorder, NOS, moderate and bulimia nervosa, acute, and rule-out borderline personality disorder features, along with episodic polysubstance and alcohol abuse.  Tr. 187; 189; 191-92. Dr. Kraft checked the boxes indicating Plaintiff had moderate limitations in maintaining social functioning, concentration, persistence or pace, and had one or two episodes of decompensation, each of extended duration.  Tr. 194.  Dr. Kraft did not give "full weight" to Dr. Toews' opinion "as preponderance of [medical evidence of record] suggests [claimant] can do simple work away from the general public."  Tr. 196.   Dr. Kraft also completed a Mental Residual Functional Capacity Assessment form, and she checked the boxes that indicated Plaintiff was moderately limited in several categories, and markedly limited in the ability to interact with the public.  Tr. 198-99.

James Bailey, Ph.D., completed a cursory "case analysis" form on July 10, 2008, and stated that Plaintiff was seen at a mental

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 22

health appointment and his interview behavior was "passive but slightly manipulative...."  Tr. 218.  Dr. Bailey affirmed Dr. Kraft's opinion.  Tr. 218.

These nonexamining physician opinions contradict the opinions of the treating and examining physicians.  Tr. 137; 139-40; 145-47; 180-83; 203-05; 247-050; 254-57.  As noted, "a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record." *Lingenfelter*, 504 F.3d at 1038 n.10.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester,* 81 F.3d at 831.

In this case, the ALJ failed to provide "specific and legitimate" reasons for rejecting the opinions from treating medical providers and instead adopting the opinions from nonexamining physicians.  Again, the ALJ failed by offering only summary conclusions.  The ALJ did not set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings that explained why the interpretation of these physicians, rather than the examining and treating medical providers, are correct.  *See Magallanes*, 881 F.2d at 751; *Reddick*, 157 F.3d at 725.  A review of the record reveals the evidence does not support Dr. Kraft and Dr. Bailey's assessments.  Tr. 137; 139-40; 145-47; 180-83; 203-05; 247-050; 254-57.  Instead, the objective medical evidence in the record, as interpreted by Plaintiff's treating and examining medical providers, indicates Plaintiff is severely impaired and requires intense

treatment before he can enter the workforce or school.  The ALJ must "give weight not only to the treating physician's clinical findings and interpretation of test results, but also to [their] subjective judgments." *Lester*, 81 F.3d at 832-33.

Moreover, as discussed above, the ALJ's characterization of Plaintiff's "significant activities of daily living" is not supported by the record.  The Plaintiff's minimal daily activities is not a "specific and legitimate" reason supported by the record that justifies favoring two nonexamining opinions over treating and examining medical provider opinions and, thus, the ALJ's weighing of Dr. Kraft and Dr. Bailey's opinions was error.  On remand, the ALJ should reconsider the opinions of the nonexamining doctors and provide valid reasons for the weight she assigns to Dr. Kraft and Dr. Bailey's opinions.

**C.    Remedy**

When an ALJ's denial of benefits is not supported by the record, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or  explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotation marks omitted).  The court may exercise discretion and direct an award of benefits "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).  Remand for further proceedings is appropriate where outstanding issues exist that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the

evidence were properly evaluated. *See Vasquez v. Astrue,* 572 F.3d 586, 593 (9th Cir. 2009); cf. *Reddick*, 157 F.3d at 729.  This case must be remanded for the ALJ to provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the evidence described above was properly considered.  The record may contain evidence that the ALJ could cite to provide the requisite specific, legitimate reasons for rejecting the medical opinions, so remand is the proper remedy. Therefore, the court finds remand for further proceedings is appropriate to allow the ALJ to remedy the above mentioned errors.

### CONCLUSIONS AND RECOMMENDATIONS

The court has reviewed the record and considered the briefing by the parties. For the reasons stated above, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 15) be **GRANTED** and Defendant's Motion for Summary Judgment (ECF No. 18) be **DENIED.**

### OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations, or report within **fourteen (14)** days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection. Attention is directed to FED. R. CIV. P. 6(d), which adds

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 25

1  additional time after certain kinds of service.

2      A district judge will make a *de novo* determination of those

3  portions to which objection is made and may accept, reject, or

4  modify the magistrate judge's determination. The judge need not

5  conduct a new hearing or hear arguments and may consider the

6  magistrate judge's record and make an independent determination

7  thereon. The judge may, but is not required to, accept or consider

8  additional evidence, or may recommit the matter to the magistrate

9  judge with instructions. *United States v. Howell*, 231 F.3d 615, 621

10 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and ©, FED. R. CIV. P. 72;

11 LMR 4, Local Rules for the Eastern District of Washington.

12      A magistrate judge's recommendation cannot be appealed to a

13 court of appeals; only the district judge's order or judgment can be

14 appealed.

15      The District Court Executive is directed to enter this report

16 and forward copies to the parties and the referring judge.

17      DATED May 9, 2013.

18

19              _____S/ CYNTHIA IMBROGNO_____
              UNITED STATES MAGISTRATE JUDGE
20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 26